**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **MARK ANTHONY ORTEGA**, <br><br> Plaintiff, <br><br> v. <br><br> **POWUR, PBC INC. D/B/A Powur**, and **JOSE DANIEL LAVEAGA**, <br><br> Defendants. | Case No. Case No. 5:25-cv-00864-JKP-HJB <br><br> **DEFENDANT POWUR, PBC'S OPPOSED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |

**<u>DEFENDANT POWUR, PBC'S MOTION TO DISMISS</u>**

**<u>UNDER FEDERAL RULES 12(b)(6) and 12(b)(1)</u>**

Defendant Powur, PBC ("Powur") hereby respectfully files this Opposed Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules 12(b)(6) and 12(b)(1).

**<u>CERTIFICATE OF COMPLIANCE</u>**

1.      Powur hereby certifies that it complied with this Court's Standing Order for Motions to Dismiss Filed Pursuant to Federal Rule 12(b)(6) as follows:

2.      On August 6, 2025, counsel for Powur emailed Plaintiff, indicating that Powur intended to file a motion to dismiss pursuant to Rule 12(b)(6) and listing the deficiencies in Plaintiff's Complaint. *See* Compl. (ECF No. 1). On August 6, 2025, Plaintiff responded to Powur by email and indicated that he would not amend his Complaint based on the deficiencies identified by Powur.

3.      On August 13, 2025, counsel for Powur emailed Plaintiff a second time, listing additional deficiencies in the Complaint and indicating that Powur intended to move to dismiss Count III of the Complaint pursuant to Rule 12(b)(1). On August 14, Plaintiff responded to Powur

by email and indicated that he would not amend his Complaint based on the additional deficiencies identified by Powur.[1]

**<u>INTRODUCTION</u>**

4.     Plaintiff Mark Anthony Ortega ("Plaintiff") alleges that he received an unspecified number of calls from unnamed telemarketers starting in April 2025 regarding solar products, after he registered on the National Do-Not-Call Registry. *See* Compl. (ECF No. 1) ¶20.

5.     When the calls persisted, Plaintiff feigned interest in the services offered by the callers and scheduled an appointment to identify the entity responsible for the calls. *Id*. ¶20

6.     At that appointment, which took place on May 7, 2025, Plaintiff claims he received a call from Defendant Jose Laveaga. *Id*. ¶24.

7.     Plaintiff further claims that during that May 7 call, Mr. Laveaga stated that he was calling from Powur, and that the prior calls to Plaintiff had been made by Powur's "marketing team." *Id*. ¶25.

8.     Based solely on this alleged statement, Plaintiff now seeks to hold Powur liable for all of the earlier calls under an agency theory, as well as the May 7 call made by Mr. Laveaga.

9.     Specifically, Plaintiff alleges that Powur violated the Do-Not-Call provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R. § 64.1200, along with Chapters 302 and 305 of the Texas Business and Commerce Code. *Id*. ¶¶1, 32, 37–38, 46, 54–56.

10.     Plaintiff fails to state a claim for the calls placed before May 7, 2025, because Plaintiff has not adequately alleged that the calls were placed by Powur or its agents.

---

[1] Although this Court's Standing Order only requires written notice prior to filing a motion to dismiss under Rule 12(b)(6), Defendant sent the second written notice regarding 12(b)(1)-related deficiencies out of an abundance of caution and in an attempt to minimize the cost of litigation.

11.      Plaintiff fails to state a claim for the May 7, 2025 call under 47 U.S.C. § 227(c) and Texas Business and Commerce Code § 305, because—after excluding the earlier calls for lack of agency allegations—he does not allege he received "more than one telephone call [from Powur] within any 12-month period," as required by the statute. 47 U.S.C. § 227(c)(5).

12.      Finally, Plaintiff lacks Article III standing to bring his third cause of action under Texas Bus. & Com. Code § 302.101, because he admits that he solicited the May 7 call and any resulting harm.

13.      For these reasons, and for the additional reasons set forth below, the Court should dismiss Plaintiff's Complaint in its entirety.

## BACKGROUND

14.      Plaintiff alleges the following facts in his Complaint.[2] *See* Compl. (ECF No. 1).

15.      In April 2025, Plaintiff received "numerous unsolicited telemarketing calls" to his phone number ending in 9663, despite being registered on the National Do-Not-Call Registry since 2012. *Id*. ¶¶15, 20.

16.      "The purpose of the calls was to generate leads for the sale of solar panel goods and services." *Id*. ¶20.

17.      Plaintiff made multiple clear and unequivocal requests to the callers to stop calling his number and to be placed on the callers' internal do-not-call list. *Id*. ¶21.

18.      Plaintiff "was forced to feign interest" in the callers' services in order to identify the entity responsible for the calls. *Id*. ¶22.

19.      To do that, on May 6, 2025, Plaintiff "engaged with" an unspecified number of unnamed callers. *Id*. ¶23.

---

[2] Powur's recitation of Plaintiff's allegations does not constitute an admission of any alleged facts.

20.    The unnamed callers with whom Plaintiff engaged used the fictitious business name "US Technologies," and provided Plaintiff with a non-existent website address (www.ustechnologiessolar.com) when Plaintiff questioned the callers about their company. *Id*. ¶23.

21.    Plaintiff's engagement with the unnamed callers "resulted in a follow-up appointment being scheduled," to "uncover the caller's [sic] true identity." *Id*. ¶23.

22.    On May 7, 2025, the date of the appointment, Plaintiff received a call from Defendant Jose Daniel Laveaga ("Laveaga"). *Id*. ¶24.

23.    During the call between Plaintiff and Laveaga on May 7, 2025 (the "May 7 Call"), Laveaga allegedly identified Powur "as his company." *Id*. ¶24.

24.    Also on the May 7 Call, Laveaga allegedly "admitted that the previous calls from the fictitious entity 'US Technologies' were from Powur's 'marketing team,' thereby establishing a direct link between the deceptive preliminary calls and Defendants." *Id*. ¶25.

25.    Plaintiff alleges that during the May 7 Call, "Plaintiff made another clear and unequivocal request directly to Laveaga to be placed on Powur's internal do-not-call list." *Id*. ¶26.

26.    Plaintiff does not allege that he received any calls from Powur or Laveaga after the May 7 Call. *See id*. ¶¶1–28.

27.    Plaintiff alleges that "[a]t all relevant times, Mr. Laveaga acted as an agent of Powur, placing telemarketing calls into Texas on its behalf." *Id*. ¶13.

28.    Plaintiff claims that Defendants' violations caused him harm, "including invasion of privacy, aggravation, annoyance, wasted time, anxiety, depletion of his cellular phone's battery life and intrusion into seclusion." *Id*. ¶28.

29.    Plaintiff asserts four causes of action in his Complaint. *See* Compl. pp. 6–10.

30.    In **Count I**, Plaintiff alleges Defendants initiated or caused to be initiated calls in

violation of 47 U.S.C. §227(c)'s prohibition on calls to individuals registered on the National Do-Not-Call Registry. *See id*. ¶32.

33.    In **Count II**, Plaintiff alleges Defendants violated 47 C.F.R. §64.1200(d) by failing to honor his requests to stop calling his phone number. *See id*. ¶¶39–40.

32.    In **Count III**, Plaintiff alleges Defendants violated Texas Business and Commercial Code Section 302.101 by engaging in "telephone solicitation" without registering with the Texas Secretary of State. *See id*. ¶¶44–52.

33.    In **Count IV**, Plaintiff alleges Defendants violated Texas Business and Commerce Code Section 305.053(a) based on the Defendants' alleged TCPA violations set forth in Counts I and II. *See id*. ¶¶55–56.

## ARGUMENT

### A.    Legal Standards

#### 1.    Rule 12(b)(6)

34.    Under Rule 12(b)(6), a defendant may move to dismiss an action for "failure to state a claim upon which relief can be granted." Rule 8(a) requires that every pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standards for stating a sufficiently plausible claim for relief are well-established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023) (citing *Twombly*, 550 U.S. at 557) (a complaint is in "neutral territory," and does not satisfy Rule 8, when it "pleads facts that are merely consistent with defendant's liability"). To survive a Rule 12(b)(6) Motion to Dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678; *see also Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015). By contrast, a claim is insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2. Rule 12(b)(1)

35. "Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting subject matter jurisdiction (*i.e.*, the plaintiff) bears the burden of proof on a 12(b)(1) motion. *See Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Iqbal*, 556 U.S. at 671. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161 (citations omitted).

### 3. The TCPA

#### a. The National Do-Not-Call Registry

36. "The TCPA regulates the use of telephones to contact consumers." *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011). Section 227(c), and its implementing regulations located at 47 C.F.R. § 64.1200(c), provide a private right of action for a person who has received more than one call within a 12-month period in violation of the regulations. In turn, the regulations provide that no person or entity shall initiate any telephone solicitation to a residential telephone subscriber who has registered his or her phone number on

the national do-not-call registry. *See* 47 C.F.R. § 64.1200(c).

### b.    Entity-specific Do-Not-Call List

37.    Section 64.1200(d)(6) requires that a person or entity making any call for telemarketing purposes must maintain a record of a consumer's request to not receive further calls. Like the National Do-Not-Call regulation in Section 64.1200(c), the Fifth Circuit recognizes a private right of action for violations of Section 64.1200(d)(6). *See Callier v. Debt Mediators, LLC*, No. EP-21-CV-278-DB, 2022 WL 1423622, at *5 (W.D. Tex. May 5, 2022) ("[T]his Court, like the majority of the courts that have examined the issue, finds § 64.1200(d) was promulgated under § 227(c) and that it may be enforced using that section's private right of action.").

### c.    Agency Law and the TCPA

38.    Traditionally, a party is not responsible for the acts of another party. *See Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, 2021 WL 8053527, at *15 (W.D. Tex. Aug. 26, 2021). Even so, a defendant may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer.[3] *See Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *5 (W.D. Tex. Nov. 17, 2021). "An agency relationship is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Id.* (citing Restatement (Third) of Agency §1.01). "[T]he manner in which the parties

---

[3] "In *Campbell-Ewald Co.*, the Supreme Court, adopting a ruling issued by the FCC, found that the principles of vicarious liability and the traditional federal-common law theories of agency are applicable within the context of TCPA violations." *Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)). "The FCC's ruling relied upon federal common-law principles of agency, . . . which accord with the Restatement (Third) of Agency." *Id.*

designate the relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called." *Id.* (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 870 (5th Cir. 2000)).

39.    "Agency means more than mere passive permission; it involves request, instruction, or command." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd,* 582 F. App'x 678 (9th Cir. 2014). "In the TCPA context, courts characterize the control necessary to establish agency as whether the principal 'controlled or had the right to control [the agent] and, more specifically, the manner and means of the [telemarketing] campaign they conducted.'" *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 980 (D. Md. 2019) (quoting *Thomas*, 879 F. Supp. 2d at 1084).

40.    An agency relationship can be based on express authority, apparent authority, or ratification. *See Callier v. MultiPlan, Inc.*, 2021 WL 8053527, at *15. However, courts have rejected a theory of liability against the seller of a product for calls marketing that product absent an agency or similar relationship. *See Hirsch v. Lyndon S. Ins. Co.*, No. 3:17-CV-1215-J-39JBT, 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and recommendation adopted sub nom. Hirsch v. Ensurety Ventures, LLC*, No. 3:17-CV-1215-J-39JBT, 2019 WL 8370863 (M.D. Fla. Aug. 6, 2019), *aff'd,* 805 F. App'x 987 (11th Cir. 2020). Moreover, a plaintiff must be able to identify the agent to establish an agency relationship. *See Cardenas v. Spinnaker Resorts, Inc.*, No. CV 9:18-761-BHH, 2019 WL 7761751, at *5 (D.S.C. Mar. 5, 2019) (finding allegations that calls were placed by "unidentified 'agents'" insufficient to state claim under TCPA and requiring plaintiff to "more specifically identify other agents of Defendant" in amended complaint).

41.    Texas District Courts have regularly dismissed TCPA claims based on sparse agency allegations. *See Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019

WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) (henceforth "*Cunningham v. Lifestyles*"); *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Massachusetts*, No. EP-24-CV-00289-DB, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025); *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *6 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 3:22-CV-0136-G-BT, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023); *Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023); *Callier v. Nat'l United Grp., LLC*, 2022 WL 20046134, at *11–12; *Cunningham v. Pro. Educ. Inst., Inc.*, No. 417CV00894ALMCAN, 2018 WL 6709515, at *3 (E.D. Tex. Nov. 5, 2018), *report and recommendation adopted*, No. 4:17-CV-894, 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018).

42.    These cases make clear that to establish any agency relationship in a TCPA case under Federal Rule 8, a plaintiff must allege basic factual allegations regarding the relationship between the defendant, the purported agent, and caller. *See Cunningham v. Lifestyles*, 2019 WL 4282039, at *4. In other words, broad, general allegations are not sufficient. *See id*. For example, statements made by one caller purportedly calling on behalf of a non-defendant entity are insufficient to establish agency because "only the words or conduct of the alleged principal, not the alleged agent, establish the [actual or apparent] authority of an agent." *Id*. at 5 (quoting *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000)). Instead, the Plaintiff must allege that the defendant had control over another defendant, agent, or caller. *See Cunningham v. Lifestyles,* 2019 WL 4282039, at *5. "[T]he mere possibility that a defendant may be vicariously liable is not sufficient to state a claim for relief, and pleading facts that are merely consistent with liability is not enough." *Id*. (citing *Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *7 (M.D. Tenn. Nov. 19, 2014)). Indeed, in *Cunningham v. Lifestyles*, Judge Christine

Nowak cited the Sixth Circuit case *Cunningham v. Kondaur Capital* for the premise that a plaintiff's allegation that callers told plaintiff they were prospecting for leads on behalf of defendant was not sufficient to show the callers were in fact acting at the directive of or on behalf of defendant. *See id*. Similarly, an allegation that the defendant merely benefited from the calls is not enough to establish agency. *See Callier v. Nat'l United Grp.*, 2022 WL 20046134, at *11 (citing *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6593 (F.C.C. May 9, 2013)).

### 4.    Article III Standing

43.    Article III standing is a jurisdictional requirement that limits federal courts' decision-making authority to actual cases and controversies. *See* U.S. Const. art. III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A Rule 12(b)(1) motion to dismiss is the appropriate means by which a defendant can challenge a Plaintiff's standing. *See, e.g.*, *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

44.    Standing is established by demonstrating: (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (quoting *Lujan*, 504 U.S. at 560–61). To satisfy the injury-in-fact requirement, a plaintiff must allege an injury that is "both concrete *and* particularized." *Spokeo, Inc.* 578 U.S. at 340 (emphasis in original). An injury is "concrete" if it is real and not abstract. *Id*. Crucially, "Article III standing requires a concrete injury *even in the context of a statutory violation*." *Id*. at 341 (emphasis added). In other words, allegations of a bare procedural violation divorced from any concrete harm do not satisfy the injury-in-fact requirement of Article III. *Id*. at 342.

45.    When a plaintiff alleges that he consented to the allegedly violative phone calls (*i.e.*, the exact conduct that he challenges through his lawsuit), there is no concrete injury sufficient

for Article III standing. *See Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572, 577 (N.D. Ill. 2017). In *Legg*, the court analyzed whether putative class members who consented to receive calls had suffered a concrete injury sufficient for standing. 321 F.R.D. at 577. Applying *Spokeo, Inc.*, the court found that if a class member "expressly agreed and expected to receive calls from defendant, and did receive those calls, the adopter has not been injured in any way, even if defendants technically violated a procedural requirement of the TCPA." *Id.* (citing *Spokeo, Inc.*, 578 U.S. at 340–41). Similarly, in *Winner v. Kohl's Department Stores, Inc.*, the plaintiffs alleged that Kohl's sent unauthorized autodialed telemarketing text messages in violation of Section 227(b) of the TCPA. *See id*. No. CV 16-1541, 2017 WL 3535038, at *1 (E.D. Pa. Aug. 17, 2017). Kohl's moved to dismiss under Rule 12(b)(1), arguing that plaintiffs did not suffer an injury in fact because they asked Kohl's to send the message they received. *Id.* at *5. The court held that "[b]ecause they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC." *Id.* at *6.

### 5.    Texas Business and Commerce Code Sections 302 and 305

46.    Texas Business and Commerce Code ("TBCC") Section 302 prohibits telephone solicitations from a location in Texas or to a purchaser located in Texas unless the caller holds a registration certificate for the business location from which the telephone solicitation is made. TBCC § 302.101(a); *see also Callier*, 2022 WL 20046134, at *12.

47.    TBCC Section 305.053 provides a private cause of action for a violation of the TCPA or its implementing regulations. *See, e.g.*, *Hunsinger*, 2023 WL 2377481, at *9. A TCPA violation is a prerequisite to a violation under TBCC Section 305.053. *Id*. at *9. That is, Section 305.053 "proscribes only that conduct which is also prohibited by the TCPA. If no violation of the

TCPA exists, there is no violation." *Hunsinger*, 2022 WL 562761, at *5 (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014)); *see also Cunningham v. Politi*, No. 418CV00362ALMCAN, 2019 WL 2519702, at *7 (E.D. Tex. Apr. 26, 2019), *report and recommendation adopted*, No. 4:18-CV-362, 2019 WL 2526536 (E.D. Tex. June 19, 2019) ("Because Plaintiff's underlying (federal) TCPA claims fail, Plaintiff's state TCPA claim under § 305.053 also fails.").

### 6. Supplemental Jurisdiction over State Law Claims

48.    A district court may decline to exercise supplemental jurisdiction over state claims if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). In fact, if the district court has dismissed all claims over which it has original jurisdiction, it ordinarily should "kick the case to state court." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 31-32 (2025). At least one Texas District Court has declined to exercise supplemental jurisdiction over a TBCC Section 302.101 claim after dismissing predicate TCPA claims. *See Hunsinger*, 2023 WL 2377481, at *10.

### B. Plaintiff has not stated a claim under 47 U.S.C. § 227(c) (Count I) because he has not adequately alleged that the pre-May 7 callers were agents of Powur.

49.    Count I seeks to hold Powur liable under the TCPA's Do-Not-Call provision based on calls Plaintiff received prior to May 7, 2025. *See* Compl. ¶ 32. To do so, Plaintiff must plausibly allege that those calls were made by, or on behalf of, Powur. *See Cunningham v. Lifestyles*, 2019 WL 4282039, at *3–4. Plaintiff has not done so.

50.    Plaintiff alleges that received multiple unsolicited telemarketing calls beginning on or around April 2025. *See* Compl. ¶ 20. However, for all calls before the May 7 Call, Plaintiff admits that he was unable to identify the callers because they used fictitious business names (such

as "US Technologies") and provided a non-existent website address. *See* Compl. ¶¶ 22–25. Plaintiff only linked these calls to Powur after an appointment with one caller resulted in the May 7 Call, during which Mr. Laveaga allegedly said that the previous calls were from Powur's "marketing team." *Id.* ¶ 25. However, this statement alone does not plausibly allege an agency relationship.

51.    Plaintiff's allegation regarding Powur's supposed "marketing team" is conclusory and lacks any factual detail, even under Rule 8's notice pleading standards. Specifically, the Complaint provides no facts as to how Powur controlled, directed, or authorized the purported agents, nor does the Complaint identify any contractual, employment, or operational relationship between Powur and the people who called under fictitious names. Compl. ¶¶ 22–26. The fact that Powur allegedly engaged a third-party "marketing team" does not mean that an agency relationship existed. *See Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *7. Plaintiff is merely (and impermissibly) pleading facts consistent with Powur's alleged liability. *See Armstrong*, 60 F.4th at 270.

52.    A prior decision by this Court, finding that the same Plaintiff (i.e. Mr. Ortega) sufficiently alleged agency is distinguishable. In *Ortega v. DiTommaso Inc.* No. 5:24-CV-00369-JKP, 2025 WL 440278 (W.D. Tex. Feb. 6, 2025)., this Court declined to dismiss TCPA claims at the pleadings stage where the complaint included factual details directly connecting the alleged third-party telemarketer to the defendant seller. There, Plaintiff had alleged: (1) he received a telemarketing call from defendant Meridian Services, (2) the call was immediately transferred to Remy Pastorelli, defendant DiTommaso's owner, (3) follow-up texts came directly from Pastorelli, and (4) DiTommaso's business model relied on Meridian for live transfers and lead generation through telemarketing. *See id.* at *5–6. The Court emphasized these factual

allegations—an actual transfer to Pastorelli (an owner of defendant), direct communication with Pastorelli, and a description of the business relationship between the caller and owner—as sufficient to infer an agency relationship under common law principles. 2025 WL 440278, *5–6.

53.    Here, Plaintiff's Complaint against Powur fails to allege any comparable facts linking Powur to the conduct of the unnamed callers prior to May 7, 2025. The only direct connection alleged is that, during the May 7 Call, Mr. Laveaga purportedly stated the earlier calls were from Powur's "marketing team." Compl. ¶ 25. Unlike the *DiTommaso* case, there are: a) no allegations of direct call transfers from a telemarketer to Powur; b) no allegations that the callers identified Powur by name; c) no post-May 7 Call calls or messages from Powur representatives; d) no details about any contractual or operational relationship between Powur and the third-party callers; or e) no business structure or relationship described demonstrating Powur's direct benefit or control from inbound leads, as in *DiTommaso Inc*.

54.    The mere labeling of unidentified third-party callers as Powur's "marketing team" without any supporting factual detail as to Powur's oversight, control, authorization, or benefit is conclusory and insufficient, even under Rule 8(a). *See Cunningham v. Lifestyles, LLC*, 2019 WL 4282039, at *5; *Gonzalez*, 2025 WL 1145266, at *4–5. Even Plaintiff's allegation that Mr. Laveaga identified Powur by name for the unidentified callers is insufficient. *See Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *7. Nor is any allegation that such calls were for the benefit of Powur. *See Callier*, 2022 WL 20046134, at *11. As courts have routinely held, such naked assertions of agency do not satisfy Rule 8(a)'s pleading standards as clarified by *Twombly* and *Iqbal*. *Callier*, 2022 WL 20046134, at *3–4, 11.

55.    In summary, Plaintiff's allegations that Mr. Laveaga said that the pre-May 7 calls were made by Powur's "marketing team" is insufficient to allege an agency relationship between

Powur and these callers, even under Rule 8's notice pleading standard. Thus, the Court should dismiss Count I to the extent it is based on the pre-May 7 calls pursuant to Rule 12(b)(6).

**C.**     **Plaintiff has not stated a claim under 47 U.S.C. § 227(c) (Count I) as to the May 7 Call because he has not alleged that he received more than one violative call.**

56.     Assuming the Court dismisses Count I with respect to all pre-May 7, 2025 calls, *see Supra* Part B, Count I must likewise be dismissed as to the May 7 Call because a single telemarketing call is insufficient to state a claim under the TCPA's do-not-call provisions.

57.     The TCPA requires at least two violations in a 12-month period to state a claim under the National Do-Not-Call Registry requirements. *See* 47 U.S.C. § 227(c)(5). Here, if the Court concludes that Plaintiff's allegations regarding calls prior to May 7, 2025 fail to state a claim due to insufficient pleading of agency, then Plaintiff's only remaining allegation of telemarketing activity under Count I is the single telemarketing call he allegedly received on May 7, 2025—*i.e.*, the May 7 Call. Under the plain text of § 227(c)(5), receipt of a single telephone call does not trigger statutory liability.

58.     Thus, if Plaintiff's allegations concerning any calls prior to May 7, 2025 are dismissed, Count I must also be dismissed as to the May 7 Call.

**D.**     **Plaintiff has not stated a claim under 47 C.F.R. § 64.1200(d) (Count II) because he has not alleged that he received any calls from Powur after requesting not to be contacted.**

59.     Count II is based on Plaintiff's allegation that Powur failed to honor his request not to receive further calls. *See* Compl. ¶¶39–40. The relevant regulation, 47 C.F.R. § 64.1200(d), requires two elements: (1) the plaintiff must have made a clear request not to be contacted by the caller, and (2) the defendant must have placed at least one subsequent telemarketing call after

receiving that request. *See* § 64.1200(d)(6). Because Plaintiff has not adequately alleged an agency relationship for the calls before May 7, 2025, Count II must also be dismissed.

60.     While the Complaint asserts that Plaintiff made "clear and unequivocal requests to the callers to stop calling his number and to be placed on an internal do-not-call list" during calls before May 7, 2025, *see* Compl. ¶¶21, 39, Plaintiff has not adequately alleged that these calls were made by Powur or its agents. *See supra*, Part B. Thus, any do-not-call request made during those earlier calls, even if clear, did not trigger obligations for Powur under § 64.1200(d)(6).

61.     Plaintiff further alleges that he made a direct do-not-call request to Laveaga on May 7, 2025. *See* Compl. ¶26. However, Plaintiff does not allege that he received any calls from Powur or Laveaga after that May 7, 2025 request. *Id*. ¶¶1–28

62.     Because Plaintiff has not alleged any post-May 7, 2025 telemarketing communications from Powur or its agents, Count II should be dismissed.

**E.     Plaintiff has not stated a claim under TBCC § 305 (Count IV) because he has not stated a claim under the TCPA.**

63.     Texas Business and Commerce Code Section 305.053 provides a civil action to any person who receives a telecommunication in violation of the TCPA. However, the statute does not create independent obligations—it merely allows a private right of action for conduct that violates the TCPA itself. *See Hunsinger*, 2023 WL 2377481, at *9. Thus, Plaintiff's Count IV is expressly predicated on Powur's alleged violations of the TCPA. *See* Compl. ¶¶55–56.

64.     As discussed above, Plaintiff has not stated a viable claim under the TCPA. Specifically, Plaintiff has failed to allege receipt of more than one telemarketing call in a twelve-month period attributable to Powur in violation of 47 U.S.C. § 227(c), and he has not alleged any calls from Powur or its agents in violation of 47 C.F.R. § 64.1200(d) after making a do-not-call

request. Without a predicate violation of the TCPA, there can be no derivative liability under TBCC Section 305. *See Hunsinger*, 2022 WL 562761, at *5; *Cunningham v. Politi,* No. 4:18-cv-00362-ALM-CAN, 2019 WL 2519702, at *7 (E.D. Tex. Apr. 26, 2019), *report and recommendation adopted,* No. 4:18-CV-362, 2019 WL 2526536 (E.D. Tex. June 19, 2019).

65.    Thus, the Court should dismiss Count IV under Rule 12(b)(6).

**F.    Plaintiff lacks Article III standing to assert a claim under TBCC § 302.101 (Count III) because he solicited the May 7 Call.**

66.    Assuming the Court dismisses Count I as to all calls made before May 7, 2025, the Court should also dismiss Count IV pursuant to Federal Rule 12(b)(1) because Plaintiff has not alleged a concrete, particularized injury. *See Legg*, 321 F.R.D. at 577; *Winner*, 2017 WL 3535038, at *6.

67.    Plaintiff alleges that he feigned interest in a telemarketer's services "for the sole purpose of identifying the true entity responsible for the unlawful calls." Compl. ¶22. Plaintiff further alleges that on May 6, 2025, Plaintiff "engaged with callers" and scheduled a follow-up appointment, which resulted in the May 7, 2025 Call from Laveaga, who was acting on behalf of Powur. Compl. ¶23.

68.    Because Plaintiff initiated and solicited the May 7 Call as part of an effort to investigate or expose Powur's conduct, he cannot plausibly allege the "invasion of privacy," "aggravation," or other cognizable harm required for Article III standing. As discussed above, courts have consistently held that self-solicited or invited communications do not produce the concrete injury-in-fact necessary for standing, particularly where the plaintiff's actions are calculated to prompt the challenged conduct. *See Legg*, 321 F.R.D. at 577; *Winner*, 2017 WL 3535038, at *6.

69.     Thus, assuming that the Court finds that Plaintiff has not adequately alleged an agency relationship regarding the pre-May 7 calls, Plaintiff's claim under TBCC § 302.101 must be dismissed for lack of Article III standing.

**G.    Alternatively, the Court should decline to exercise supplemental jurisdiction over Plaintiff's Texas law claims (Counts III and IV).**

70.     Assuming the Court dismisses Plaintiff's TCPA claims, it should also decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, set forth in Counts III and IV, which arise solely under the Texas Business and Commerce Code.

71.     When a federal district court has dismissed all claims over which it has original jurisdiction, it possesses broad discretion to decline supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Hunsinger*, 2023 WL 2377481, at *10.

72.     Here, if Plaintiff's only surviving claims arise under Texas law, there is no federal interest remaining in the case and the Court should dismiss those claims, as is the ordinary practice.

## <u>CONCLUSION</u>

Based on the foregoing, the Court should dismiss Counts One, Two, and Four under Rule 12(b)(6), and Count Three under Rule 12(b)(1) for lack of Article III standing or under 28 U.S.C. § 1367.

Respectfully submitted,

DATED: August 20, 2025                    **KRONENBERGER ROSENFELD, LLP**


By:    s/ James D. Carlson
    James D. Carlson
    Arizona Bar Card Number: 033259
    California Bar Card Number: 362056

548 Market Street, PMB 85399
San Francisco, CA 94108
jim@kr.law
Telephone: (415) 955-1155
Fax: (415) 955-1158

Attorneys for Defendant Powur, PBC