UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARK ANTHONY ORTEGA**,<br><br>Plaintiff,<br><br>v.<br><br>**POWUR, PBC INC. D/B/A POWUR**, and **JOSE DANIEL LAVEAGA**,<br><br>Defendants. | Case No. Case No. 5:25-cv-00864-JKP-HJB<br><br>**DEFENDANT POWUR, PBC'S REPLY IN SUPPORT OF OPPOSED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)** |

### DEFENDANT POWUR, PBC'S REPLY IN SUPPORT OF OPPOSED MOTION TO DISMISS UNDER FEDERAL RULES 12(b)(6) and 12(b)(1)

Defendant Powur, PBC ("Powur"), by and through its undersigned counsel, hereby respectfully responds to Plaintiff Mark Anthony Ortega ("Plaintiff")'s opposition to Powur's Opposed Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules 12(b)(6) and 12(b)(1) (the "Motion").

### INTRODUCTION

1. Plaintiff argues that he has adequately alleged that Powur is vicariously liable for multiples calls made by unidentified telemarketers before Plaintiff received a single call from Defendant Jose Laveaga ("Laveaga") on May 7, 2025 (the "May 7 Call").

2. Plaintiff's only factual allegations supporting this claim are: (a) that Laveaga said the prior calls to Plaintiff came from Powur's "marketing team," and that Powur was his company (*see* Compl. ¶¶23–25; Opp. ¶¶16–17); and (b) that Powur maintains "Seller Policies and Procedures," which contain language requiring Powur's sellers to adhere to the TCPA. *See* Compl. (ECF No. 1) ¶¶24–25, 27.

1

3. These allegations are merely consistent with an agency relationship between Powur and the unnamed telemarketers, and thus fall short of creating a reasonable inference that one or more of these telemarketers were agents of Powur. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

4. Specifically, even accepting the truth of Laveaga's allegations—as the Court must at this stage—the allegations only indicate that Powur engaged the telemarketers. However, businesses regularly create relationships with other businesses (including for the purchase of leads) without one becoming the agent of the other. The suggestion that Powur benefited from such a relationship does not plausibly establish an agency relationship.

5. Plaintiff's Response in Opposition (the "Opposition" or "Opp.") to Powur's Motion does not clarify the agency allegations against Powur, and instead confuses direct and vicarious liability, with arguments like ". . . the Complaint sufficiently establishes a plausible basis for Powur's vicarious and or direct liability [sic] for the entire campaign." Opp. (ECF No. 13) ¶3.

6. Thus, the Court should dismiss the Complaint in its entirety with prejudice.

7. The Court should also deny Plaintiff's alternative request to amend his Complaint pursuant to Rule 15(a)(2) (Opp. at p. 12) because Powur sent Plaintiff two notices pursuant to this Court's Standing Order for Motions to Dismiss. *See* Compl. ¶¶1–3.

## ARGUMENT

**A.  Plaintiff must allege facts that are more than merely consistent with a principal-agent relationship between Powur and the unidentified telemarketers.**

8. In order to survive Powur's Motion, Plaintiff must have alleged facts that, when accepted as true, allow the Court to draw a reasonable inference that the unidentified telemarketers were agents of Powur. *See Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). Plaintiff must

allege enough facts to show that it is plausible—and not just conceivable—that the telemarketers were Powur's agents. *See Walker*, 938 F.3d at 734. In other words, Plaintiff must allege facts that are more than merely consistent with the telemarketers being Powur's agents. *See id.* Such allegations "'stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Id.* at 735 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

**B.     Plaintiff fails to plausibly allege agency or vicarious liability for the pre-May 7 calls.**

9.     Plaintiff's assertion of vicarious liability is based on two allegations: (a) that Defendant Laveaga told Plaintiff that Powur was "his company," and that the prior calls to Plaintiff came from Powur's "marketing team" (*see* Compl. ¶¶23–26; Opp. ¶¶16–17); and (b) that Powur maintains "Seller Policies and Procedures," which contain language requiring Powur's sellers to adhere to the TCPA. *See* Compl. ¶ 27; Opp. ¶18. To support the sufficiency of his allegations, Plaintiff relies primarily on *Ortega v. DiTommaso Inc.* and *Pinn v. Quintessa, LLC*. These cases are distinguishable, and Plaintiff's allegations of an agency relationship between Powur and the telemarketers is deficient.

**1.     *Ortega v. DiTommaso Inc.* and *Pinn v. v. Quintessa, LLC* are distinguishable from this case and undermine Plaintiff's arguments about vicarious liability.**

**a.     *Ortega v. DiTommaso Inc.***

10.     While Plaintiff points to *Ortega v. DiTommaso Inc.*, No. 5:24-CV-00369-JKP, 2025 WL 440278, at *1–8 (W.D. Tex. Feb. 6, 2025) ("*DiTommaso*") to support his position, he fails to address the differences between the allegations in his Complaint and the allegations in *DiTommaso*. In fact, the allegations in *DiTommaso* are readily distinguishable. Plaintiff seemingly concedes this point, but disregards it as unimportant:

> While the facts [of *DiTommaso*] are not identical, the core principle remains: a plaintiff can state a plausible claim for vicarious liability

3

by pleading specific facts, such as an agent's direct admission, that trace the anonymous calls back to the principal defendant. Plaintiff has done so here. Opp. ¶19.

11. As Powur explained in its Motion, this Court relied on several allegations in *DiTommaso* to find vicarious liability that are not present in Plaintiff's Complaint, namely: (a) there is no allegation that Plaintiff was transferred from any of the unnamed telemarketers to Powur; (b) there is no allegation that the unnamed telemarketers identified Powur by name (in fact, they gave Laveaga a different name, "US Technologies"; (c) there are no allegations of calls from Powur representatives directly following the May 7 Call; (d) there are no details about any contractual or operational relationship between Powur and the unnamed telemarketers; and (e) there are no allegations of a business structure or relationship demonstrating Powur's direct benefit or control from the telemarketers' calls. *Compare* Compl. ¶¶ 20–29 *with DiTommaso*, 2025 WL 440278, *5–6. Thus, unlike in *DiTommaso*, Plaintiff here has failed to sufficiently allege that the telemarketers were agents of Powur.

      **b.**    *Pinn v. Quintessa, LLC*

12. Plaintiff also argues that *Pinn v. Quintessa, LLC* supports a finding that Laveaga's statements "directly traces" the telemarketers to Powur. Opp. ¶17 (citing *Pinn*, No. 3:24-CV-3090-B, 2025 WL 2201050, at *4 (N.D. Tex. Aug. 1, 2025)) ("*Pinn*"). Plaintiff's reliance on *Pinn* is misplaced. As a preliminary matter, like *DiTommaso*, the plaintiff in *Pinn* alleged a live transfer from one named defendant (the agent) to another (the principal); and in both cases, the principal-defendant either admitted or otherwise confirmed that the agent-defendant made the calls on the principal-defendant's behalf. *See Pinn*, 2025 WL 2201050, at *3–5; *DiTommaso*, 2025 WL 440278, at *6. This agent-principal's live transfer was key to the court's finding in both cases. *See id*. Here, by contrast, Plaintiff has not alleged a live transfer from the telemarketers to Powur.

4

13. In reality, the facts of *Pinn* undermine Plaintiff's arguments regarding Powur's alleged vicarious liability for the pre-May 7 calls. The plaintiff in *Pinn* received several calls in June 2024 from telemarketers about an "Accident Claim Helpline." *Pinn,* 2025 WL 2201050, at *1. Then, in July of 2024, the plaintiff received three calls from telemarketers claiming to be from "Accident Plan Helpline (or something similar)." *Id*. at *1. The plaintiff investigated by feigning interest, and she was transferred to defendant Quintessa, which gave the plaintiff the name "Accident Helpline." *Id*. Quintessa then identified defendant InfoWorx as the caller who placed the three July phone calls to the plaintiff. *Id*. The court found that the plaintiff had adequately alleged that Quintessa and InfoWorx had an agency relationship because: (a) the plaintiff alleged InfoWorx transferred her to Quintessa, (b) both companies offered similar services to the plaintiff, and (c) both companies gave similar company names to the plaintiff. *Id*. at *4–5. Moreover, Quintessa "conceded" that InfoWorx made the three July calls to the plaintiff. *Id*. at *3. Here, Plaintiff has alleged no similar facts.

14. Unlike in *Pinn*, where the plaintiff alleged that defendant InfoWorx transferred the plaintiff to defendant Quintessa, here, Plaintiff has not alleged that the unnamed telemarketers transferred Plaintiff to Powur. *Id*. at *4; Compl. ¶¶20–26. Additionally, unlike in *Pinn*, where defendant Quintessa admitted that defendant InfoWorx made the three July calls to the plaintiff, here Plaintiff has not alleged that Powur admitted the pre-May 7 calls were from Powur. 2025 WL 2201050, at *6; Compl. ¶¶23–25. And unlike in *Pinn*, where InfoWorx and Quintessa gave the plaintiff very similar company names, here, Plaintiff alleges the telemarketers gave Plaintiff a different, fictitious company name, "US Technologies." 2025 WL 2201050, at *4; Compl. ¶¶23, 25. Thus, *Pinn* does not support Defendant's argument that the unnamed telemarketers were agents of Powur.

15. Crucially, the court in *Pinn* held that the plaintiff had not alleged sufficient facts to hold defendants Quintessa and InfoWorx liable for the earlier telemarketing calls the plaintiff received in June of 2024. 2025 WL 2201050, at *6. ("[Plaintiff] does not allege any facts that allow the Court to draw the reasonable inference that Quintessa or InfoWorx placed these calls."). The court in *Pinn* pointed out that the June telemarketers did <u>not</u> transfer the plaintiff to Quintessa. *Id*. at *6. The court also noted that the June calls were from different phone numbers than InfoWorx, and that the company name given by the June telemarketers was different than the company names given by Quintessa and InfoWorx. *Id*. ("Further, the June callers were from 'Accidental Claim Helpline,' while the July callers were from 'Accidental Plan Helpline' and 'the Accident Helpline.'").

16. Like in *Pinn*, where the previous telemarketing calls came from different numbers and used a different company name than the named defendants, here, Plaintiff has alleged the pre-May 7 telemarketers used spoofed numbers and a fake company name, "US Technologies." *See Pinn*, 2025 WL 2201050, at *4–6; Compl. ¶¶23, 25. Thus, *Pinn* actually shows that the facts alleged by Plaintiff here do not support a finding that Powur is liable for the pre-May 7 calls.

### 2. Plaintiff impermissibly lumps Laveaga and Powur together.

17. Plaintiff does not allege that the telemarketers who called prior to May 7 identified Powur. Compl. ¶¶23–25. Instead, Plaintiff alleges that <u>Laveaga</u> said Powur's "marketing team" made the pre-May 7 calls:

> During the May 7, 2025 call, Defendant Laveaga admitted that the previous calls from the fictitious entity "US Technologies" were from Powur's "marketing team," thereby establishing a direct link between the deceptive preliminary calls **and Defendants**.

Compl. ¶25. In other words, Plaintiff lumps Laveaga and Powur together to argue that the unnamed telemarketers were Powur's agents. *Id*. Plaintiff does this throughout his Complaint. *See id*. Compl.

6

¶¶25, 28, 32–35, 39–41, 43, 45, 51, 55–56, and 58. He also makes this argument in his Opposition, while citing *Pinn*:

> "In *Pinn v. Quintessa, LLC*, for example, the court noted that a plaintiff states a vicarious liability claim by alleging facts that 'trace the defendant to the caller.' . . . Mr. Laveaga's statement does precisely that, it directly traces the otherwise anonymous 'US Technologies' callers to Powur, creating a plausible link between Powur and the entire campaign."

Opp. ¶17 (pp. 5–6). Yet Judge Boyle rejected a nearly identical argument in *Pinn* while noting the Fifth Circuit's prohibition on group pleading. 2025 WL 2201050, at *10 ("[plaintiff] cannot simply define 'InfoWorx' as two entities and one person and then claim that all three are responsible for everything that [plaintiff] alleges InfoWorx did. Such an approach would constitute impermissible group pleading."). Similarly, Senior Judge Briones held that "[g]eneral allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant." *Callier v. Nat'l United Grp.*, 2021 WL 5393829, at *4 (citations omitted). Using the "collective term 'Defendants'. . . with no distinction as to what acts are attributable to whom" fails to meet the fair notice standard under Rule 8. *Callier*, 2021 WL 5393829, at *4 (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Here, like in *Pinn*, Plaintiff cannot simply define "Defendants" as two distinct legal entities (Laveaga and Powur) and then claim both are responsible for everything one of them said. *Compare* Compl. ¶¶25, 28, 32–35, 39–41, 43, 45, 51, 55–56, and 58, *with Pinn*, 2025 WL 2201050, *10 and *Callier*, 2021 WL 5393829, at *4.

        18.    Thus, Plaintiff's impermissible group allegations, such as those in Paragraph 25 of his Complaint, further undermine Plaintiff's argument that he has adequately

alleged an agency relationship between Powur and the unnamed telemarketers.[1]

### 3. The existence of Powur's policies and procedures does not establish that Powur controlled the telemarketers who called Plaintiff prior to May 7.

19. Plaintiff attempts to bolster his agency argument by pointing to his allegation that Powur's Seller Policies and Procedures are "factual support for the crucial element of control." Opp. ¶18. This argument relies on Plaintiff's allegation that Powur's policies demonstrate Powur's authority to control its sellers' conduct. *See* Compl. ¶27. Without citation to any legal authority, Plaintiff claims "secondary sources confirm that allegations of internal policies can support a plausible inference of agency." Opp. ¶18. Plaintiff adds, again without citation, that "pleading the existence of such a compliance framework creates a reasonable inference of Powur's right to control its agents' agents." *Id*. In other words, Plaintiff argues and alleges that the mere *existence* of Powur's internal TCPA policy is enough to establish that Powur controlled the unnamed telemarketers who called Plaintiff prior to May 7, and that Powur is therefore vicariously liable for those calls. Not so.

20. To allege vicarious liability based on control, Plaintiff would need to allege specific supporting facts that indicate Powur actually asserted control over the unnamed telemarketers. *See*

---

[1] Plaintiff does not allege that Laveaga is an employee of Powur. Rather, Plaintiff alleges that Laveaga was an "agent" of Powur. Compl. ¶13. Thus, even if the telemarketers were agents of Laveaga, there are no alleged facts that they were agents of Powur. "An agent may appoint a subagent only if the agent has actual or apparent authority to do so." Restatement (Third) of Agency §3.15 (2006). "An agent has actual authority to create a relationship of subagency when the agent reasonably believes, based on a manifestation from the principal, that the principal consents to the appointment of a subagent." *Id.* at cmt. c. "An agent has no implied authority to delegate his powers to a subagent, and any one so employed by him does not become the agent of the principal without the principal's consent." *Lincoln Nat'l Life Ins. Co. v. Cowboy Athletics, Inc.*, No. 3:10-CV-173-P, 2010 WL 11464661, at *3 (N.D. Tex. Dec. 1, 2010) (citation omitted). Plaintiff has alleged no facts supporting a subagency relationship between the telemarketers and Powur.

8

*Cunningham v. Lifestyles Dev., LLC*, No. 419CV00006ALMCAN, 2019 WL 4282039, at *4 (E.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 4:19-CV-00006, 2019 WL 4277507 (E.D. Tex. Sept. 10, 2019) (citing *Warciak v. Subway Restaurants, Inc.*, No. 1:16-cv-08694, 2019 WL 978666, at * (N.D. Ill. Feb. 28, 2019)). Broad, general allegations of control are not sufficient. *See Cunningham*, 2019 WL 4282039, at *4; *see also Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Massachusetts*, No. EP-24-CV-00289-DB, 2025 WL 1145266, at *4–5 (W.D. Tex. Apr. 15, 2025) (plaintiff's failure to allege that principal-defendant controlled the manner and means of caller's operation was insufficient to establish control for vicariously liability). Here, Plaintiff's argument that Powur has a TCPA policy—"the existence of a compliance framework," as Plaintiff puts it—is not enough to demonstrate that Powur even knew about (let alone actually controlled) the unnamed telemarketers with that policy. *See Cunningham,* 2019 WL 4282039, at *4; Compl. ¶18.

## C.    Powur agrees that the remainder of Powur's motion rises and falls on whether the Court finds that Plaintiff has adequately alleged an agency relationship.

21.    Powur concedes that the remainder of Powur's Motion depends on whether this Court finds that Plaintiff has adequately alleged an agency relationship between Powur and the unnamed telemarketers who called prior to May 7. *See* Motion §§ C–G, ¶¶56–58, 59, 64, and 66. To the extent the Court finds that Plaintiff has not sufficiently alleged vicarious liability for the pre-May 7 calls, Plaintiff does not meaningfully address any of the other defects in his claims identified in Powur's Motion.

22.    As set forth above, Plaintiff has failed to adequately allege the unnamed telemarketers were agents of Powur or that Powur is otherwise responsible for the pre-May 7 calls. Thus, this Court should dismiss Counts One, Two, and Four under Rule 12(b)(6), and Count Three under Rule 12(b)(1) for lack of Article III standing or under 28 U.S.C. § 1367.

## CONCLUSION

23. As this Court has pointed out, Plaintiff has on at least two prior occasions had issues with properly pleading his claims. *Cf. Ortega v. Elite Living Realty, LLC*, No. 5:24-CV-0768-JKP, 2025 WL 1449954, at *1 (W.D. Tex. May 20, 2025).[2] Here, Plaintiff's claims against Powur display similar issues, and his Complaint should be dismissed in its entirety.

24. To the extent Plaintiff seeks leave to amend his Complaint (Opp. p. 12), Powur requests the Court deny such relief. Plaintiff already declined the opportunity to amend twice, when Powur informed Plaintiff of the bases of its Motion and the proposed deficiencies in Plaintiff's Complaint on August 6 and August 13, pursuant to this Court's Standing Orders. *See* Motion ¶¶1–3. Plaintiff's claims should be dismissed with prejudice, without any further opportunity to amend.

Respectfully submitted,

DATED: September 2, 2025          **KRONENBERGER ROSENFELD, LLP**

                                  By:   s/ James D. Carlson
                                        James D. Carlson
                                        Arizona Bar Card Number: 033259
                                        California Bar Card Number: 362056
                                        548 Market Street, PMB 85399
                                        San Francisco, CA 94108
                                        jim@kr.law
                                        Telephone: (415) 955-1155
                                        Fax: (415) 955-1158

                                  Attorneys for Defendant Powur, PBC

---

[2] "Plaintiff is no stranger to this Court. A search of the Court's database reveals fifteen similar cases brought by him. At least two of his prior cases had issues with him properly pleading his claims." (citing *DiTommaso*, 2025 WL 440278, at *1–8 (partially dismissing claims) and *Ortega v. Sienna Mktg. & Consulting Inc.*, No. SA-24-CV-00487-OLG, 2025 WL 899970, at *1 (W.D. Tex. Mar. 4, 2025) (recommendation of Mag. J.) (recommending partial dismissal of claims) *adopted by* 2025 WL 899968 (W.D. Tex. Mar. 21, 2025).